**KENTUCKY BAR ASSOCIATION,**
**Movant**

v.

**Terry Ray EDWARDS, Respondent.**

**No. 2012–SC–000142–KB.**

Supreme Court of Kentucky.

Sept. 20, 2012.

## OPINION AND ORDER

While acting as co-curator managing the financial affairs of his disabled ward, Terry Ray Edwards[1] wrote checks to himself totaling $78,000 from his ward's funds; sold his ward's home without court approval; failed to file the required accountings with the court; and paid himself $20,810 in fees from the ward's funds.

Edwards's activities resulted in a Bar Complaint against him, for which the Inquiry Commission issued a four-count Charge for violating Kentucky Supreme Court Rules (SCR) 3.130–1.8(a)(1), 3.130–3.4(c), 3.130–8.3(b), and 3.130–8.3(c).[2] Edwards filed an initial response to the Bar Complaint but ignored requests for information and other communication from the Office of Bar Counsel (OBC). Edwards never responded to the Charge, so the case ultimately came before the Board of Governors of the KBA as a default case.

Before the Court is the Board of Governors' Findings of Fact, Conclusions of Law, and Recommendation, which found Edwards guilty of violating the Kentucky Rules of Professional Conduct, as charged in all four counts. The Board of Governors unanimously recommends that Edwards be permanently disbarred from the practice of law, ordered to pay full restitution to the ward's estate, and ordered to pay the costs of the proceeding. For the reasons set forth below, we adopt the decision of the Board of Governors, with the exception of Count III, because we find Edwards guilty of Counts I, II, and IV.

### I. KBA FILE NO. 17372.

Emma Frances Kottmyer was adjudged to be incompetent to handle her finances,

---

1. Admitted to practice law in Kentucky in 1984, Kentucky Bar Association (KBA) Member No. 20435, bar roster address, 7000 Houston Road, Suite 16, Florence, Kentucky 41042.

2. The events that gave rise to this matter occurred before the July 2009 amendments to the Kentucky Rules of Professional Conduct went into effect. So we apply the Kentucky Rules of Professional Conduct in effect before July 2009.

having been diagnosed with dementia and early-onset Alzheimer's disease. The district court appointed Edwards, who was Kottmyer's attorney on several occasions for over a decade before the appointment, and Ernest R. Hafley, a Kottmyer family friend, as co-curators of Kottmyer's financial affairs.[3]

While acting as co-curator, Edwards made several unexplained withdrawals from Kottmyer's IRA account; sold her home without court approval; and paid himself $20,810 in fees. Edwards wrote checks to himself totaling $78,000, designating these disbursements as "loans." During this time, Edwards failed to file the required accounting of Kottmyer's estate.

Kottmyer's death ended the curatorship. But for more than a year after Kottmyer's death, Edwards failed to file a final settlement, resulting in a contempt order from the district court commanding Edwards to show cause for his failure to appear at a hearing on the matter. A month later, the district court issued a subpoena for Edwards and directed notification of the corporate surety.

Co-curator Hafley initiated a civil action against Edwards and the corporate surety.

Robert Kottmyer, Kottmyer's son and the administrator of her estate, intervened in the action. The civil action culminated in a settlement in which the corporate surety agreed to pay Kottmyer's estate $75,000. In return, Kottmyer's estate assigned its claims against Edwards to the surety company.

Robert Kottmyer filed the Bar Complaint against Edwards to which he filed an initial response. But the OBC requested additional information from Edwards, to which Edwards provided no response. The Inquiry Commission placed the matter in abeyance until the conclusion of the pending civil suit between Robert Kottmyer and Edwards and removed it from abeyance upon notice from Edwards that the suit was settled.

The Inquiry Commission issued a four-count Charge against Edwards for violating: (1) SCR 3.130–1.8(a)(1),[4] by taking various sums of money from the Kottmyer estate while serving as co-curator; (2) SCR 3.130–3.4(c),[5] by failing to respond to the Show Cause Orders of the district court and failing to file timely accountings as ordered by the court; (3) SCR 3.130–8.3(b),[6] by taking money from the estate's

---

**3.** The terms of the appointment required Edwards and Hafley to file an Inventory and Appraisement of Ms. Kottmyer's real estate, personal property, and other financial resources within sixty days of the date of appointment; file a periodic settlement two years after the date of the appointment; file a periodic settlement every year thereafter; and a final settlement upon the termination of their appointment or the death of Kottmyer.

**4.** SCR 3.130–1.8(a) reads, "A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can

be reasonably understood by the client; (2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (3) The client consents in writing thereto."

**5.** SCR 3.130–3.4(c) reads, "A lawyer shall not ... [k]nowingly or intentionally disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

**6.** SCR 3.130–8.3(b) reads, "It is professional misconduct for a lawyer to ... [c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness[,] or fitness as a lawyer in other respects." Effective July 15, 2009, SCR 3.130–8.3(b) was renumbered to SCR 3.130–8.4(b), without substantive change.

account without authorization or consent; and (4) SCR 3.130–8.3(c),[7] by breaching his fiduciary duty to Kottmyer by making unauthorized loans to himself with money from her account. Edwards failed to file an answer to the Charge, despite numerous reminders and attempts at communication from the OBC.

Under SCR 3.210(1), the Inquiry Commission sent this case to the Board of Governors as a default case. The Board of Governors then issued its Findings of Fact, Conclusions of Law, and Recommendation. The Board found Edwards guilty of all four counts asserted in the Charge and unanimously recommended permanent disbarment, restitution to the Kottmyer estate, and the award of costs of the bar proceedings. Edwards filed a notice of review, and he and the KBA submitted briefs to this Court.

## II. EDWARDS VIOLATED SCR 3.130–1.8(A), SCR 3.1303.4(C), AND SCR 3.1308.3(C).

■ The Board of Governors properly determined Edwards violated SCR 3.130–1.8(a), SCR 3.130–3.4(c), and SCR 3.130–8.3(c). Edwards admits to these violations in his brief submitted to this Court. We find the Board's conclusion regarding these charges supported by the record and the law. And we adopt the decision of the Board of Governors for these charges.[8] We agree that Edwards violated the Rules of Professional Conduct by taking funds

from the Kottmyer estate while serving as co-curator.

## III. A CRIME MUST BE ALLEGED FOR SCR 3.130–8.3(B) TO APPLY.

The Board of Governors found Edwards guilty of violating 3.130–8.3(b), Count III of the Charge. Edwards now challenges this ruling and the sufficiency of the Charge because of the Inquiry Commission's failure to state a criminal statute he violated. And Edwards challenges the Board of Governors' failure to apply the facts to the law and state a crime relevant to his conduct. We agree with Edwards.

Implicit in this Court's authority to review, even default cases, is the authority to review the entire record and the law supporting the Board of Governors' recommendation. But we note that Edwards is precluded from raising issues of fact at this point in the disciplinary process as a result of the KBA proceeding under SCR 3.210 governing default cases.

### A. Default Does Not Foreclose Edwards's Ability to Argue Issues of Law or this Court's Ability to Review the Record.

In default cases, this Court has previously held that "when an attorney fails to respond to a complaint, the allegation of the complaint may be taken as confessed."[9] This line of cases dates back to *In re Weaks*,[10] decided in 1958. The decision

---

7. SCR 3.130–8.3(c) reads, "It is professional misconduct for a lawyer to ... [e]ngage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation." Effective July 15, 2009, SCR 3.130–8.3(c) was renumbered to SCR 3.130–8.4(c), without substantive change.

8. SCR 3.370(9).

9. *Kentucky Bar Ass'n v. Cameron*, 262 S.W.3d 643, 645 (Ky.2008) (internal brackets omitted)

(quoting *Kentucky Bar Ass'n v. Sivalls*, 165 S.W.3d 137, 139 (Ky.2005) (quoting *Kentucky Bar Ass'n v. Roney*, 862 S.W.2d 315, 317 (Ky.1993))).

10. 318 S.W.2d 850, 851 (Ky.1958) ("When the respondent fails to answer a complaint, the allegations thereof may be taken as confessed.... In such cases, the rule is made absolute, and it is required that judgment be entered adjudging [Respondent] guilty of unprofessional conduct and that the recommen-

in *Weaks* rests on the former Rules of the Court of Appeals,[11] which preceded the adoption of the Supreme Court Rules in 1978. This Court declines to continue to rely on this line of cases because the rule upon which they rest is no longer valid. For the reasons stated below, Edwards is not barred from arguing issues of law before this Court, even though this is a default case.

BLACK'S LAW DICTIONARY defines *allegation* as "[s]omething declared or asserted as a matter of fact, esp. in a legal pleading; a party's formal statement of a factual matter as being true or provable, without its yet having been proved."[12] When an attorney does not file a response and a case proceeds against him by default, the *facts* of the case are taken as confessed. Edwards is foreclosed from arguing the facts before this Court. But issues of law are not confessed.

■ This Court is free to review the entire record upon appeal from the Board of Governors, regardless if dealing with a default case. SCR 3.210 details when a

default case is allowed,[13] while SCR 3.370 describes the procedure of a case before this Court and the Board of Governors.[14] And SCR 3.370(9) empowers the Court to "enter such orders or opinion as it deems appropriate on the *entire record.*"[15] The Court has this authority when a notice of review is filed.[16] But the Court also has the authority to review the Board of Governors' recommendation at its discretion.[17] The Board of Governors' decision must be adopted only if the respondent does not file a notice of review or the Court does not exercise its discretion to review the decision.[18] In those circumstances, the respondent would be precluded from arguing issues of law. The circumstances presented in the instant case allow Edwards to raise the issue of no crime stated in the Charge because he filed a notice of review.

## B. Count III Is Insufficient Because It Asserts No Illegality.

■ The Board of Governors found Edwards guilty of violating SCR 3.130–8.3(b) because of his unauthorized taking of money from Kottmyer's account for his person-

dation of the Bar Association suspending him from the practice of law be approved.") (citations omitted).

11. *Weaks* relies on RCA 3.290 and RCA 3.450. RCA 3.290 reads, "If the respondent fails to file an answer on or before the date specified in the notice provided for in RVA 3.270, or, when proceeded against by warning order ... unless additional time for the filing of the answer be granted by the Trial Committee, that Committee may take the allegations of the complaint as confessed." RCA 3.450 reads, "[i]f the respondent fails to appear or file due response on the rule's return day, or, when proceeded against by warning order, ... unless further time is given by the Court, the rule shall forthwith be made absolute, and the Court shall enter judgment against the respondent, adjudging him guilty of unprofessional conduct and disciplining him."

12. BLACK'S LAW DICTIONARY (9th ed.2009).

13. The instant case arose under 3.210(1), which states that "[i]f no answer is filed after a Respondent is notified, the Inquiry Commission shall order the record, together with such investigative evidence as may have been obtained, to be submitted to the Board."

14. SCR 3.370 makes no mention of any particular procedural steps for default cases.

15. SCR 3.370(9) (emphasis added).

16. *See* SCR 3.370(8).

17. *See* SCR 3.370(9).

18. *See* SCR 3.370(10) ("If no notice of review is filed by either one of the parties, or the Court under paragraph nine (9) of this rule, the Court shall enter an order adopting the decision of the Board or the Trial Commissioner, whichever the case may be, relating to all matters.").

al use. Because of Edwards's inaction before the Inquiry Commission, this case became a default case; and the record was not developed as it would have been had there been a hearing before a Trial Commissioner.[19] In such cases, the Board of Governors must rely on the Charge issued by the Inquiry Commission when determining the respondent's guilt. The Charge is critical, especially in default cases. And it should convey enough factual information to support a finding of a violation of the count(s) it asserts.

■ The Inquiry Commission is required to state the illegal nature of a respondent's conduct. This comports with the plain language of SCR 3.130–8.3(b). The rule reads, "It is professional misconduct for a lawyer to: *commit* a *criminal* act that reflects adversely on the lawyer's honesty, trustworthiness[,] or fitness as a lawyer in other respects."[20] *Commit*, as defined by BLACK'S LAW DICTIONARY, means, "to perpetrate (a crime)."[21] The use of the word *commit* in SCR 3.130–8.3(b) indicates that the respondent's act must evince an illegality. And to meet the requisite burden of proof, the Inquiry Commission must state what the illegality is. Without

stating an alleged crime encompassing Edwards's conduct, the Inquiry Commission fails to provide sufficient evidence that Edwards's act was *criminal.*[22] Rather, the Inquiry Commission only alleges that Edwards committed an act but does not identify the crime committed.

In the instant case, Edwards's conduct certainly appears illegal. He could have been charged with theft by unlawful taking[23] or possibly theft by failure to make required disposition of property.[24] But the Inquiry Commission did not apply the law to Edwards's conduct to allege adequately that he committed a criminal act. There was no conclusion of law regarding Edwards's criminal conduct by the Board of Governors because there was no crime alleged in the Charge.

The KBA argues that the proof provided for Count IV is sufficient to sustain a conclusion of a criminal act under Count III. The evidence for Count III and Count IV may very well be the same, and this is allowable. But the Inquiry Commission must state a crime that Edwards's actions constitute before a violation of SCR 3.130–8.3(b) can stand.

19. The Board relied solely on the Charge because of the default proceedings. At no point in its Findings of Fact, Conclusions of Law, and Recommendation is there any indication what criminal act Edwards committed. The Board simply makes a statement that Edwards committed a criminal act by taking the money from Kottmyer Stating the conduct, but not stating the illegality, will not support a finding of a violation of SCR 3.130–8.3(b). In default cases, this is a direct result of the lack of specificity of the Charge.

20. SCR 3.130–8.3(b) (emphasis added).

21. BLACK'S LAW DICTIONARY (9th ed.2009).

22. *See* SCR 3.160(2).

23. KRS 514.030. "[A] person is guilty of theft by unlawful taking or disposition when he unlawfully: [t]akes or exercises control

over movable property of another with intent to deprive him thereof." The Kentucky Crime Commission/LRC Commentary to the statute makes clear the offense "is intended to be all-inclusive of offenses involving the wrongful appropriation of property."

24. KRS 514.070. "A person is guilty of theft by failure to make required disposition of property received when: [h]e obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition whether from such property or its proceeds or from his own property to be reserved in equivalent amount; and [h]e intentionally deals with the property as his own and fails to make the required payment or disposition."

■ We do not hold that a criminal conviction is required for SCR 3.130–8.3(b) to be applicable or even that charges must be filed.[25] The KBA must, only meet a preponderance-of-the-evidence standard,[26] much lower than the beyond-a-reasonable-doubt standard required for a criminal conviction. We only require a Respondent's actions to be shown, by a preponderance of the evidence, to fit within a crime under state or federal law. The Board of Governors' finding of guilt on Count III will be set aside because the Charge was insufficient in regard to that count.[27]

## IV. PERMANENT DISBARMENT IS APPROPRIATE.

■ The Court finds that permanent disbarment is the appropriate sanction for Edwards. We have a duty to "safeguard the public's trust that this Court maintains a bar membership that has the fitness and character to practice law."[28] Clients evince a high level of trust when they hand over control of their money to a lawyer. And Edwards admittedly violated that important trust relationship.

We now turn to Edwards's contention that permanent disbarment is too severe. Edwards cites several cases in which this Court opted for suspension and restitution as an appropriate sanction rather than permanent disbarment. These cases are distinguishable from the instant matter, and they are unpersuasive. For example, the amount of money involved in *Elliott v. Kentucky Bar Ass'n,*[29] was considerably less than the $78,000 here; Elliot participated fully in the disciplinary proceedings; and the violation was a one-time occurrence. And Elliot did not take advantage of a highly vulnerable, disabled client by taking funds that were in his custody and control or selling assets without court approval, as Edwards did in this case. In *Kentucky Bar Ass'n v. Hammond,*[30] again the amount of money involved was far less than the $78,000 at issue here. Hammond was actually paid by clients for services that were later not rendered, rather than taking client funds that were entrusted to him, as Edwards did in this case. And, in *Kentucky Bar Ass'n v. Hawkins,*[31] the amount of money involved was substantially less than $78,000; and Hawkins was able to present mitigating factors that are absent in this case. The cases cited by Edwards offer little persuasive value to this Court in dealing with the instant circumstances.

Edwards argues that he should not be permanently disbarred because of several mitigating factors, including paying the full amount of the "loans" back to the estate in 2006. But Edwards has offered no proof

---

25. *See Kentucky Bar Ass'n v. Glidewell,* 348 S.W.3d 759, 761–62 (Ky.2011) ("Though Respondent has not been prosecuted or convicted for violating KRS 434.155, such a prosecution or conviction is not a prerequisite for finding a violation of the rules of professional conduct, which need only 'be proven by a preponderance of the evidence.' "); *see also* ABA Model Rules of Professional Conduct 8.4 Commentary ("It is not necessary for a lawyer to be convicted of, or even charged with, a crime to violate the rule.").

26. SCR 3.330.

27. Ordinarily, under these circumstances, we would remand for modification consistent with this opinion; but we find sufficient alternative grounds to adopt the Board of Governors' recommendation of permanent disbarment.

28. *Grigsby v. Kentucky Bar Ass'n,* 181 S.W.3d 40, 43 (Ky.2005).

29. 341 S.W.3d 119 (Ky.2011).

30. 241 S.W.3d 310 (Ky.2007).

31. 260 S.W.3d 337 (Ky.2008).

of these mitigating factors; and, even if he had, permanent disbarment would still be appropriate.[32] The argument that Edwards's "client[ ] did not suffer a loss and that all funds were finally paid cannot be considered mitigating in the circumstances presented here."[33] Edwards's conduct was not only a breach of duty to his ward, but also his duty to the court and the public. By converting his client's funds to his own use, he committed "an offense greater and broader than a mere injury to his client."[34] The entire bar is brought into disrepute, and the public trust is severely damaged.[35] Permanent disbarment is warranted.

This Court has consistently held attorneys to a very high standard when dealing with clients' funds. And permanent disbarment has been consistently applied in such circumstances.[36] The misappropriation of clients' money is an extremely serious offense and should be dealt with accordingly. Edwards took $78,000 from Kottmyer's account; sold her home and principal asset without authorization or consent from the district court; repeatedly failed to perform the duties required of him by the district court; and declined to participate at every juncture of these disciplinary proceedings. This conduct "evinces the unfitness ... to be a member of the legal profession and an officer of the Court."[37] It is the role of this Court to "uphold the ideals and traditions of an honorable profession[,]" and Edwards has fallen short of these lofty principles.

Edwards urges us to view his lack of disciplinary record as a mitigating factor. But "even a single case of such gross neglect, misconduct, and misappropriation of funds can justify permanent disbarment."[38] In the instant circumstances, Edwards neglected his duty to the court and took advantage of a vulnerable, disabled client. And this conduct warrants permanent disbarment.

## V. CONCLUSION.

We agree that Edwards was guilty of Counts I, II, and IV. Count III is set aside because of the Inquiry Commission's failure to identify the crime committed by Edwards. His conduct warrants permanent disbarment as recommended by the Board of Governors. And we adopt the recommendation of the Board of Governors.

For the foregoing reasons, the Court ORDERS:

1) Terry Ray Edwards, KBA Member No. 20435, is guilty of violating SCR 3.130–

---

32. Edwards requests that this Court remand to a Trial Commissioner for an evidentiary hearing. "[R]espondent has been afforded the full measure of due process" but has "failed to respond in any manner. Thus[,] respondent failed to preserve his option to argue his view and to present evidence. Since Respondent has not disclosed any newly-discovered matter, he has not demonstrated sufficient cause that would justify remanding this matter to the Board of Governors." *Kentucky Bar Ass'n v. Roney,* 862 S.W.2d 315, 317 (Ky.1993). We deny his request but leave open the question of when the granting of such request in default cases may be appropriate.

33. *Kentucky Bar Ass'n v. Collis,* 535 S.W.2d 95, 96 (Ky.1975).

34. *Id.*

35. *See id.*

36. *See, e.g., Kentucky Bar Ass'n v. Christian,* 320 S.W.3d 687 (Ky.2010); *Kentucky Bar Ass'n v. Steiner,* 157 S.W.3d 209 (Ky.2005); *Kentucky Bar Ass'n v. Allen,* 32 S.W.3d 765 (Ky.2000); *Collis,* 535 S.W.2d 95; *Kentucky Bar Ass'n v. Tucker,* 535 S.W.2d 97 (Ky.1975).

37. *Collis,* 535 S.W.2d at 96.

38. *Kentucky Bar Ass'n v. Eubanks,* 647 S.W.2d 789 (Ky.1983) (citation omitted).

1.8(a), SCR 3.130–3.4(c), and SCR 3.130–8.3(c), as alleged in KBA File No. 17372;

2) Edwards is not guilty of violating SCR 3.130–8.3(b), as alleged in KBA File No. 17372;

3) Edwards is ordered to pay full restitution to the Estate of Emma Frances Kottmyer;

4) Edwards is hereby permanently disbarred from the practice of law in the Commonwealth of Kentucky;

5) In accordance with SCR 3.450, Edwards is ordered to pay all costs associated with these disciplinary proceedings against him, said sum being $2,308.36, for which execution may issue from this Court upon finality of this Opinion and Order; and

6) Pursuant to SCR 3.390, Edwards shall, within ten days from the entry of this Opinion and Order, notify all clients, in writing, of his inability to represent them; notify, in writing all courts in which he has matters pending of his disbarment from the practice of law; and furnish copies of all letters of notice to the Office of Bar Counsel. Furthermore, to the extent possible, Edwards shall immediately cancel and cease any advertising activities in which he is engaged.

All sitting. All concur.

ENTERED: September 20, 2012.

/s/ John D. Minton, Jr.
    Chief Justice