RENDERED:  AUGUST 18, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1465-MR

COMMONWEALTH OF KENTUCKY                                        APPELLANT


v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE BRIAN C. EDWARDS, JUDGE
ACTION NO. 19-CR-001930


CARRIE L. CARROLL                                              APPELLEE


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, ECKERLE, AND GOODWINE, JUDGES.

CETRULO, JUDGE:  The Commonwealth appeals a Jefferson Circuit Court order

discharging Appellee Carrie Carroll ("Carroll") from diversion and converting the

remainder of her criminal restitution into a civil judgment.  After review, we find

no statutory authority for such a conversion, and therefore we vacate and remand.

# BACKGROUND

In April 2019, Carroll made unapproved charges on a credit card belonging to her mother, Brunilda Landram[1] ("Landram") while she was in the hospital with lung cancer. In July 2019, Carroll pled guilty – pursuant to a plea agreement – to one count of wantonly or recklessly exploiting an adult. The restitution order held Carroll solely liable for the total amount of restitution and directed her to pay $6,190. Carroll received a two-year sentence, but that was diverted for three years "or until restitution is paid in full, whichever is longer[.]" Monthly payments were set at $50 per month.

In June 2020, Carroll filed a motion to remove restitution as a condition of her diversion because Landram had passed away. After a hearing, the court granted her motion but allowed for payments to be re-established after the estate was settled. In March 2021, the circuit court reinstated restitution with payments to Emily Hathcock,[2] the sole beneficiary of Landram's estate. The circuit court entered a new restitution order in the remaining amount of $5,641.42. This second restitution order stated "[d]ue to the amount of restitution owed and

---

[1] The parties (intermittently) refer to Carroll's mother as "Landrum," but the record contains a letter from the restitution coordinator correcting the victim's name to "Landram."

[2] Emily Hathcock is Landram's sister, Carroll's aunt.

the length of the payment terms, the Court finds that it is necessary that probation extend beyond five years until restitution is paid in full."

In September 2022, Carroll moved the circuit court to "discharge her from diversion and convert the remainder of her restitution into a civil judgment." The Commonwealth opposed the motion, but the circuit court granted the motion based on its broad statutory powers to 1) establish restitution parameters, and 2) modify or enlarge the conditions of probation. In its order, the circuit court noted that Carroll had completed her three-year diversion without any violations and would have completed diversion but for her remaining restitution.

> At this time, further supervision and restitution payments through the criminal justice system are superfluous, and civil remedies for collecting the restitution are the more viable option. Ultimately, it is not the role of the criminal justice system and the Commonwealth of Kentucky to serve as a collections agency on these types of matters where civil remedies would be a more effective alternative.

Opinion and Order, Case No. 19-CR-001930, Jefferson Circuit Court (filed Nov. 19, 2022).

The Commonwealth appealed.

## ANALYSIS

On appeal, the Commonwealth argues that the circuit court does *not* have statutory authority to convert a restitution order to a civil judgment. The Commonwealth states, "nothing in the statutes granting [broad restitution and

-3-

probation authority] allows for a trial court to remove an order entered under its jurisdiction to oversee criminal probationers and their conditions and turn that order into a new order enforceable through the court's civil jurisdiction." Additionally, the Commonwealth argues such a conversion of criminal restitution into a civil judgment is contrary to public policy because it could improperly result in the cancellation of Carroll's restitution obligation through the diversion-to-expungement process and/or bankruptcy proceedings.

To the contrary, Carroll argues that the Kentucky Revised Statutes ("KRS") – specifically KRS 533.020, 533.030, 532.032, 533.254, and 431.200 – read as a whole, grant the circuit court broad authority to modify restitution obligations and the terms of probation, and that authority includes the implied power to convert a criminal restitution order into a civil judgment. She argues this conversion is not contrary to public policy, is a more effective way to manage restitution payments, and fulfills the purpose of the restitution statutes. While we appreciate the merits of Carroll's argument, we do not find the authority for such a conversion within the statutes.

Statutory interpretation is an issue of law, which we review *de novo*. *Jefferson Cnty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012) (citation omitted). Turning to the applicable statutes, the circuit court has broad discretion to "modify or enlarge the conditions" of probation (KRS 533.020(2)) and/or of

conditional discharge (KRS 533.020(3)). *See also* KRS 533.020(1). "Restitution shall be ordered in all cases where a victim has suffered monetary damage as a result of the alleged crime." KRS 533.254(2). More relevant here, because the circuit court granted pretrial diversion for Carroll, KRS 532.032(2) requires that "restitution shall be a part of the diversion agreement."

Carroll argues that KRS 431.200 permits a court to "give judgment against the defendant for reparation of damages . . . to be collected by another process, a civil judgment, rather than through the criminal process." However, KRS 431.200 is not applicable here. KRS 431.200 deals with *post-sentencing* orders of restitution. That statute gives the court a framework to order restitution or "give judgment against the defendant for reparation[s] in damages" in situations where the victim is not made whole (*i.e.*, where the court had not ordered the defendant to restore the property or make reparation in damages) "as a condition of probation." KRS 431.200; *see also Rollins v. Commonwealth*, 294 S.W.3d 463, 465-66 (Ky. App. 2009).

Here, the circuit court ordered restitution *at the time of sentencing* pursuant to KRS 532.032, "the generally applicable criminal restitution statute[.]" *Fields v. Commonwealth*, 123 S.W.3d 914, 916 (Ky. App. 2003). True, Carroll's restitution was ordered at sentencing (as a condition of pretrial diversion), paused for administrative purposes while an heir was located, then reinstated; however,

that reinstatement was not a new post-sentencing order. It was a continuation of the original restitution order. The circuit court was within its statutory authority to modify the terms of Carroll's probation under KRS 533.020, to extend probation until restitution was paid in full, pursuant to KRS 532.033(8), and to continue probation beyond five years if more time was "necessary to complete restitution" (KRS 533.020(4)).

Here, our objective is to look at the plain and ordinary meaning of the statute's words to determine the legislature's intent in enacting the legislation. *Comm'n on Hum. Rts. v. Fincastle Heights Mut. Ownership Corp.*, 633 S.W.3d 808, 815-16 (Ky. App. 2021) (citation omitted). We must read the relevant statute as a whole and in context with other parts of the law. *Richardson v. Louisville/ Jefferson Cnty. Metro Gov't*, 260 S.W.3d 777, 779 (Ky. 2008) (citing *Lewis v. Jackson Energy Co-op. Corp.*, 189 S.W.3d 87, 92 (Ky. 2005)). However, we are "not free to expand the scope of statutes beyond that which is evident from the language utilized by the legislature[.]" *Holsclaw v. Perkins*, 268 S.W.3d 376, 377 (Ky. App. 2008) (citation omitted). "We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used." *Id.* (quoting *Beckham v. Bd. of Educ. of Jefferson Cnty.*, 873 S.W.2d 575, 577 (Ky. 1994)). As such, we are not permitted to extend the relevant statutes to encompass a conversion of a criminal restitution order into a civil

judgment when no such power is apparent through a plain reading of the restitution statutes: KRS 533.020, 533.030, 532.032, and 533.254. Moreover, we know that the legislative purpose behind restitution includes deterrence, rehabilitation, and making the victim whole, *Hearn v. Commonwealth*, 80 S.W.3d 432, 436 (Ky. 2002), but a conversion such as requested here is not necessary to carry out that legislative intent.

Aptly, Carroll and the Commonwealth turn to public policy to further their arguments. We agree that public policy considerations may be helpful to ascertain legislative intent. *Pearce v. University of Louisville, by and through its Board of Trustees*, 448 S.W.3d 746, 749 (Ky. 2014) (citing *MPM Financial Group Inc. v. Morton*, 289 S.W.3d 193, 198 (Ky. 2009)). However, we must keep in mind, that we, as the judiciary, may *consider* public policy to determine the legislature's intent, but it is not our role to *create* public policy, as that role belongs exclusively to the legislature. *See Cameron v. Beshear*, 628 S.W.3d 61, 75 (Ky. 2021) ("As we have noted time and again, so many times that we need not provide citation, the General Assembly establishes the public policy of the Commonwealth."). While we find Carroll's public policy points noteworthy, those arguments do not outweigh a public policy concern we share with the Commonwealth.

First, Carroll argues that KRS 533.030 states the conditions of probation are "to ensure that the defendant will lead a law-abiding life or to assist him or her to do so[,]" which Carroll's incident-free diversion period successfully demonstrates. She argues that, after her initial probation period ended, the circuit court was free to modify the conditions of her diversion, including alteration of her restitution arrangement. However, that argument uses broad strokes where a detail brush would be more useful. KRS 532.033(8) clearly instructs a judge to "[n]ot release the defendant from probation supervision until restitution has been paid in full and all other aspects of the probation order have been successfully completed." We agree that the conditions of probation should encourage a lawful lifestyle, but that does not outweigh the accountability mandated by KRS 532.033.

Second, Carroll points out the intent of restitution is to restore property (or the value thereof) to the victim,[3] and because the victim here is now deceased, the intent of the statute is not furthered by continuing criminal restitution. Plainly, the death of a victim does not relieve a defendant of a duty to pay restitution. *See Kentucky Bar Ass'n v. Edwards*, 377 S.W.3d 557, 565 (Ky. 2012). True, Carroll's mother is not alive to receive the restoration of her funds,

---

[3] S*ee Vaughn v. Commonwealth*, 371 S.W.3d 784, 785 (Ky. App. 2012) (quoting *Commonwealth v. Bailey*, 721 S.W.2d. 706, 707 (Ky. 1986)) (internal quotation marks omitted) ("[T]he [Kentucky Supreme Court] explained that the purpose of restitution is not an additional punishment exacted by the criminal justice system. . . . It is merely a system designed to restore property or the value thereof to the victim.").

but her estate is less the amount stolen and her estate should be made whole and the value of her property restored.

Third, Carroll argues that converting a criminal restitution order into a civil judgment transfers debt collection to an area of the judicial process that is more efficient at that collection process.[4]  While that may be true, and we give value to that argument, the minimal benefit to judicial economy of such a conversion does not tip the scales in Carroll's favor.

Additionally, we share a public policy concern with the Commonwealth.[5]  Transferring restitution to civil court would – upon default by the payor/defendant – put the burden on the victim to pursue the funds owed.  Such a result could be costly for the payee/victim, and an unacceptable risk.  The KRS – as it relates to restitution – clearly intends to make the victim of a theft whole, not to make the victim fight to be made whole.

---

[4] Carroll argues that the criminal court is not the most effective system in managing restitution payments, in part, because additional fees imposed through the restitution and monitoring puts money into the court system that could be going to the restitution obligation.  Moreover, she argues the civil court is a more effective, cost-efficient way to collect the judgment because "liens can be placed, bank accounts can be seized, and wages can be garnished."

[5] The Commonwealth also argues that a civil judgment is *more likely* to be dischargeable through bankruptcy proceedings than criminal restitution.  While that may be true, here, under these circumstances, it is unlikely Carroll's debt would be discharged through bankruptcy in *either* form: criminal restitution (*Kelly v. Robinson*, 479 U.S. 36, 50, 107 S. Ct. 353, 361, 93 L. Ed. 2d 216 (1986)), or civil judgment (*Bartenwerfer v. Buckley*, 598 U.S. 69, 143 S. Ct. 665, 670, 214 L. Ed. 2d 434 (2023), 11 United States Code § 523(a)(2)(A)).  However, that issue is beyond our review, and it is left to the bankruptcy court to confirm each bankruptcy plan individually and to determine the rights and obligations of the parties.  *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 502, 135 S. Ct. 1686, 1692, 191 L. Ed. 2d 621 (2015).

## CONCLUSION

Accordingly, we VACATE the Jefferson Circuit Court order converting Carroll's criminal restitution into a civil judgment. Further, we REMAND for additional proceedings to continue Carroll's criminal restitution payments until restitution has been paid in full in accordance with KRS 532.033.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

Jason B. Moore
Special Assistant Attorney General
Louisville, Kentucky

BRIEF FOR APPELLEE:

Jennifer E. Hubbard
Louisville, Kentucky