**KENTUCKY BAR ASSOCIATION, Movant,**

v.

**James E. ISENBERG, Respondent.**

**No. 2010–SC–000691–KB.**

Supreme Court of Kentucky.

Jan. 20, 2011.

### *OPINION AND ORDER*

The Board of Governors of the Kentucky Bar Association (KBA) has recommended that James E. Isenberg (KBA Member No. 35270), who was admitted to the practice of law in 1976 and whose bar roster address is 429 W. Muhammad Ali Blvd., Suite 404, Louisville, KY 40202, be suspended from the practice of law for five years. We adopt the Board's recommendation.

The Board heard oral argument on this case following Isenberg's filing of a Notice of Appeal and the KBA's filing a Notice of Cross–Appeal from the Trial Commissioner's Report and Recommendation. The Board voted unanimously[1] to recommend finding Isenberg guilty of violating Kentucky Rules of Supreme Court (SCR) 3.130(1.4)(a), SCR 3.130(1.15)(a), SCR 3.130(1.15)(b), and SCR 3.130(8.3)(c) (now SCR 3.130(8.4)(c)). The Board also stated that "[t]he consensus of the Board's voting members accept[s] the Trial Commissioner's finding that Isenberg carried his burden in establishing a causal connection between his mental illness and his unethical

conduct, such that his mental illness can be considered a mitigating factor."

The Board noted that the Trial Commissioner had recommended a three-year suspension from the practice of law with conditions, but twelve Board members voted for a five-year suspension "with the additional requirement that Isenberg submit to permanent monitoring by KYLAP [Kentucky Lawyers' Assistance Program] of Isenberg's continued successful treatment and compliance with his medication and therapy" and payment of costs. Four other Board members cast votes for permanent disbarment and payment of costs.

■■■ Isenberg has not challenged the Board's Findings of Fact, Conclusions of Law, and Recommendations. So ·we find Isenberg guilty of the aforementioned violations and order that he be sanctioned in the manner recommended by a majority of the voting Board members, and we further adopt verbatim the Board's Findings of Fact and Conclusions of Law as follows:

### FINDINGS OF FACT

Isenberg was admitted to the practice of law in Kentucky on May 1, 1976. Initially, he began working in the Louisville law firm in which his father was a partner, but left this firm in 2000. Thereafter, he practiced law in "office sharing" arrangements with other attorneys in Louisville. In approximately March, 2005, Isenberg began representing Mr. Randy Finley in a Workers Compensation claim: in July, 2006, a settlement agreement was entered for a lump sum payment of $20,394.20. The Workers Compensation carrier, Zurich, issued its settlement check which Isenberg received; Isenberg then sent the settlement check to Finley with a cover letter dated August 3, 2006, asking Fin-

---

**1.** Sixteen members of the Board participated in hearing this case.

ley to endorse and return the check to Isenberg. On August 11, 2006, Isenberg deposited the entire settlement check in an account with BB&T styled "James E. Isenberg, 6710 Foxcroft Rd., Prospect, KY 40059-9420." This account is neither a trust nor escrow account.

At this point, Isenberg made a series of misrepresentations to Finley, who never received his share of the settlement. Isenberg initially told Finley it would take ten days to two weeks for the settlement check to "clear." After two weeks, Isenberg told Finley that the payment on the check was stopped by the carrier, and they would have to sue to recover the funds. On March 21, 2007, Isenberg wrote to Finley and asked Finley to sign an affidavit so Isenberg could "... present it to the Kentucky Bar Association in order to get their approval to pay you the monies due to you under the settlement agreement, and I will then file suit against the insurance carrier to recovery [sic] my money." Ultimately, in December, 2007, Finley contacted Zurich and learned that no stop payment order was ever issued on the check, and the check had cleared in August, 2006. Finley contacted Isenberg by telephone in December, 2007, and confronted him with this information: the call was disconnected, and Finley's subsequent attempts to contact Isenberg were unsuccessful. On December 28, 2007, Finley prepared a Complaint against Isenberg, which was filed with the KBA on January 7, 2008.

In January, 2008, Isenberg was taken to University of Louisville Hospital for psychiatric care and treatment; he was transferred to Wellspring, Crisis Stabilization Unit, where he was admitted on January 25, 2008 and discharged on February 4, 2008 for inpatient treatment. While Isenberg received counseling and treatment periodically for a number of years for anxiety and depression, in 2008 his initial diagnosis was major depressive disorder, moderate-severe. Outpatient treatment and counseling on an ongoing basis was pursued at Bridgehaven, an affiliate of Seven Counties Services, Inc. Gloria Everidge, LCSW, at Bridgehaven, counseled Isenberg on an outpatient basis and confirmed, by letter dated March 27, 2008, to the Louisville Bar Association, and in testimony given by deposition on February 24, 2010, that Isenberg's true diagnosis is bipolar disorder, also known as manic-depressive illness. Patients in a manic stage have inflated feelings of power, greatness, or importance and will do reckless things without concern about the consequences. Other features of the manic phase include poor judgment, reckless behavior such as spending sprees, and a denial that anything is wrong. At the hearing before the Trial Commissioner, Isenberg testified that, when he took Finley's settlement proceeds, Isenberg knew "what I was doing was wrong, but at the time I did not care." Ms. Everidge confirmed this behavior was consistent with the manic phase of bipolar disorder.

From the time of his hospitalization in 2008 through the present time, Isenberg voluntarily ceased practicing law. On March 28, 2008, on behalf of Isenberg, attorney Stuart Pearlman sent Finley a cashier's check in the amount of [approximately $18,000] representing gross settlement of $20,394.20 less $4,078.84 (attorney's fee approved by Workers Compensation Board) plus 8% interest thereon from August 17, 2006 through March 31, 2008. This payment was made unconditionally, and was provided by Isenberg's longtime friend, Joseph Fadell.

With his diagnosis of bipolar disorder, Isenberg received new medication, Seroquel, (an antipsychotic) and has pursued regular, ongoing outpatient cognitive therapy. Ramona Johnson, president and CEO of Bridgehaven Mental Health Services, testified to Isenberg's progress and assumption of responsibility and accountability for his recovery and moving on with his life. He has worked as a substitute teacher since January, 2009. Ms. Everidge testified that Isenberg's illness is currently well managed and does not present a threat so long a[s] he remains compliant with medication and support treatment. She verified that Isenberg will need continued monitoring support for his bipolar condition forever, and that he will have to manage his illness carefully to limit his practice of law to fields that are not stressful.

Throughout these proceedings, from his answer to the charge, his testimony at the hearing before the Trial Commissioner, and in briefs on appeal, Isenberg has never denied the facts giving rise to his unethical conduct. Isenberg has explained that his actions resulted from his undiagnosed and untreated bipolar disorder.

## CONCLUSIONS OF LAW

On December 18, 2008, the Inquiry Commission issued a Charge containing four counts charging violations of the following KRPC [Kentucky Rules of Professional Conduct]:

- Count I: SCR 3.130–1.4(a)—failing to keep Finley informed about the status of his Workers Compensation claim and failing to promptly respond to Finley's numerous requests for information about his claim;
- Count II: SCR 3.130–1.15(a)—depositing Finley's settlement proceeds into Isenberg's general account and failing to deposit these funds into an escrow or trust account;
- Count III: SCR 3.130–1.15(b)—failing to promptly [deliver] Finley's portion of the settlement proceeds which Finley was entitled to receive;
- Count IV: SCR 3.130–8.3(c)—engaging in dishonesty, fraud, deceit, or misrepresentation by misleading Finley with respect to the status of his settlement proceeds, claiming that Zurich stopped payment thereon, and by failing to provide the settlement proceeds to Finley in a timely manner.[2]

. . . .

The Trial Commissioner accurately assessed this as a "particularly difficult case" with respect to discipline. Likewise, the consensus of the voting members agrees that the case of *KBA v. Steiner*, 157 S.W.3d 209 (Ky.2005), provides the framework for analyzing appropriate discipline in the context of mental illness. Appealing from the Trial Commissioner's report, Isenberg advocates a one-year suspension, while the KBA advocates permanent disbarment. The consensus of the Board's voting members accept the Trial Commissioner's finding that Isenberg carried his burden in establishing a causal connection between his mental illness and his unethical conduct, such that his mental illness can be considered a mitigating factor. Unlike Steiner, who committed over 100 instances of theft from clients over a 6–year period, Isenberg has no record of prior discipline. While the

---

**2.** The prohibition against engaging in dishonesty, fraud, deceit, or misrepresentation is now contained in SCR 3.130(8.4)(c). Currently, SCR 3.130(8.3)(c) pertains to reporting other attorneys' professional misconduct.

Trial Commissioner recommended a three-year suspension from the practice of law, together with fulfillment of additional conditions, the voting members of the Board of Governors recommend discipline as follows:

[12 votes for five-year suspension with permanent KYLAP monitoring and payment of costs; 4 votes for permanent disbarment and payment of costs].[3]

Neither Isenberg nor Bar Counsel has filed a notice of review under SCR 3.370(8), nor do we independently elect to review the decision of the Board under SCR 3.370(9), meaning that the decision of the Board is hereby adopted under SCR 3.370(10).

Accordingly, the Court ORDERS:

1) James E. Isenberg is guilty of violating SCR 3.130(1.4)(a), SCR 3.130(1.15)(a), SCR 3.130(1.15)(b), and SCR 3.130(8.3)(c) (now SCR 3.130(8.4)(c)), for which he is suspended from the practice of law for five years from the date of this Opinion and Order;

2) During this suspension, Isenberg must submit to monitoring by the Kentucky Lawyers Assistance Program;

3) Isenberg must notify all courts and clients of his suspension in accordance with SCR 3.390. Those notifications must be made by letter placed in the United States mail within ten days from the date of entry of this Opinion and Order. Isenberg must also simultaneously provide a copy of all notification letters to the Director of the Kentucky Bar Association. Also, to the extent possible, Isenberg must cancel and cease any advertising activities in which he is engaged; AND

4) In accordance with SCR 3.450, Isenberg is directed to pay all costs associated with these disciplinary proceedings, the

sum of $2,335.13, for which execution may issue from this Court upon finality of this Opinion and Order.

. All sitting. All concur.

ENTERED: January 20, 2011.

/s/ John D. Minton, Jr.
    Chief Justice