TO BE PUBLISHED

# Supreme Court of Kentucky

2014-SC-000259-KB

JAMES GRANT KING                                                         MOVANT
KBA Member No. 88465

V.                                   IN SUPREME COURT

KENTUCKY BAR ASSOCIATION                                          RESPONDENT

## OPINION AND ORDER

James Grant King has moved this Court to impose a partially probated suspension with conditions for his admitted violation of Supreme Court Rule (SCR) 3.130-1.15(a). The Kentucky Bar Association (KBA) has no objection to King's motion. King was admitted to practice law in the Commonwealth of Kentucky on October 23, 2000. His bar roster address is 115 Noah Cove, Suite A, Paducah, Kentucky 42003, and his KBA number is 88465.

### I.    BACKGROUND

On June 24, 2013, the Inquiry Commission charged King with two counts of violating SCR 3.130-1.15(a) which provides in pertinent part that: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." The charges arose from King's representation of Mary Ann and

Noble Faulkner related to their December 8, 2009, motor vehicle accident. We separately set forth the underlying facts related to the charges below.

In mid-April 2010, with Mary Ann's authorization, King settled her claim for $4,500.00. King deposited those settlement funds in his escrow account on April 20, 2010. King did not immediately distribute the settlement funds because he needed to verify whether Medicaid would assert a lien. On June 17, 2010, after Medicaid had advised King that it was not asserting any lien, King distributed Mary Ann's $2,925.00 portion of the settlement funds to her. Between the time he received the settlement funds and the time he distributed them, King failed to continuously maintain an escrow account balance sufficient to pay Mary Ann her portion of the funds.

On July 23, 2010, King received a $25,000.00 check in settlement of Noble's claim, which King deposited in his escrow account. As with Mary Ann's settlement, King did not immediately distribute any of the funds to Noble because of a potential Medicaid lien. On August 25, 2010, Medicaid indicated that it would be asserting a lien. Thereafter, King distributed $1,000.00 checks from the escrow account to Noble on November 3, 2010, December 7, 2010, and January 13, 2011. On January 11, 2011, Medicaid advised King that it would not be asserting a lien, and King advised Noble accordingly. At Noble's request King held the remaining settlement funds until November 21, 2011, when he remitted them to Noble. Between the time he received the settlement funds and the time he distributed them to Noble, King failed to continuously

2

maintain an escrow account balance sufficient to pay the amount ultimately due Noble.

Finally, during the relevant time periods, King used funds from his escrow account to make payments to MetLife Home Mortgage, Parenting & Family Magazine, Nissan, Anthem Health Insurance, the Kentucky Unemployment Insurance Fund, and others. These payments were unrelated to King's representation of clients.

Based on the preceding facts, the Inquiry Commission issued a two count charge alleging that King violated SCR 3.130-1.15(a) by commingling his personal funds with the Faulkners', by overdrawing his escrow account, and by using funds in his escrow account to pay personal expenses. In response to the charges, King filed his affidavit and affidavits from a current and former employee stating that at all relevant times King had sufficient cash on hand in his office to pay the amounts due the Faulkners. According to King, he did not want to deposit the money into his "business account for various unrelated reasons," and he used money from his escrow account to pay personal expenses rather than using the cash on hand.

We note that King was disciplined on August 23, 2012, when he received a public reprimand as a result of convictions for driving under the influence, third offense, and endangering a minor. We conditioned the public reprimand on King's agreement to: (1) not commit any additional crimes; (2) comply with a supervision agreement he entered into with Kentucky Lawyer's Assistance Program (KYLAP); (3) pay his bar dues; (4) comply with all Continuing Legal

3

Education (CLE) requirements; and (5) pay the costs associated with the proceedings. In the event King failed to comply with the conditions, the public reprimand would be converted to a sixty-one (61) day suspension. There is nothing in the record indicating that King has failed to comply with the preceding conditions.

On May 16, 2014, King filed a motion asking this Court to impose a one-hundred-eighty-one (181) day suspension, with sixty-one (61) days to serve, the balance being probated for a period of two years. In exchange, King agreed that the KBA could move to revoke the probated portion of the sanction if he received any charge of professional misconduct based on a conviction for a felony or Class A misdemeanor or any charge of professional misconduct based on a complaint filed after entry of this Court's opinion and order herein. Additionally, King agreed to extend his KYLAP agreement for a period of two years and to attend the next scheduled Ethics and Professionalism Enhancement Program.

The KBA filed a response stating that the Chair of the Inquiry Commission and a Past President of the KBA reviewed the motion and relevant case law, and it has no objection. However, the KBA recommended one change in the conditions requested by King. Instead of conditioning his probation on no felony or Class A misdemeanor convictions during the probationary period, the KBA recommends probation be conditioned on "no criminal charges" during the two year probationary period.

4

## II.  ANALYSIS

As noted above, King admits that he violated SCR 3.130-1.15(a) as set forth in the Inquiry Commission's charge.  Sanctions for such violations run the gamut from disbarment (*Hayes v. Kentucky Bar Ass'n*, 790 S.W.2d 237, 238 (Ky. 1990) (attorney misappropriated client's funds that were to be used to pay child support, forged the intended recipient's name, and overdrew his escrow account)) to a thirty day suspension probated for one year (*Mitchner v. Kentucky Bar Ass'n*, 407 S.W.3d 549, 553 (Ky. 2013)(attorney, among other violations, deposited an advance fee payment into his operating account rather than his escrow account)).

Having reviewed King's motion, the record from the KBA, the KBA's response to King's motion, and relevant case law, we conclude that the discipline proposed by King is appropriate.  However, to be consistent with the August 23, 2012, Opinion and Order, we condition his sanction, in part, on his not committing any crimes during the probationary period.  In doing so, we note that, although King is currently under the disciplinary terms of this Court's August 23, 2012, Opinion and Order, the charges herein arose from conduct that preceded that Opinion and Order.  Furthermore, we note that, although King inappropriately handled the Faulkners' funds, there are no allegations that the Faulkners did not receive all of the money to which they were entitled.  Finally, we agree with the KBA that the remedial education King has agreed to undertake is appropriate, and we believe that King will benefit from an extension of the existing KYLAP agreement.

5

ACCORDINGLY, IT IS ORDERED THAT:

1.  James Grant King, KBA Member No. 88465, is suspended from the practice of law for one-hundred-eighty-one (181) days, with sixty-one (61) days to serve and the balance probated for two years from the date of this Order.

2.  King shall not commit any crimes, including misdemeanors and felonies, during the period of probation.

3.  King shall not receive any new disciplinary charges during the probationary period related to conduct discovered or occurring after the date of this Order.

4.  King shall attend at his own cost and successfully complete the next available Ethics and Professionalism Enhancement Program, and King will not apply for CLE credit for his attendance at that program. Furthermore, King will provide an appropriate release form so that his CLE records can be reviewed for one year following his completion of that program.

5.  King shall extend the KYLAP Supervision Agreement he entered into pursuant to this Court's August 23, 2012, Opinion and Order. The extension shall be under the same terms and conditions as contained in that Opinion and Order.

6.  King shall notify all necessary courts and clients of his sixty-one (61) day suspension in accordance with SCR 3.390(b). Those notifications shall be

6

made by letter placed in the United States mail within ten (10) days from the date of this Opinion and Order. King shall also simultaneously provide a copy of all such letters to the Office of Bar Counsel. Also, to the extent possible, King shall cancel and cease any advertising activities in which he is engaged;

7) Pursuant to SCR 3.390, King shall not, during the term of suspension, accept new clients or collect unearned fees; and

8) Pursuant to SCR 3.450, King is directed to pay all costs associated with this disciplinary proceeding, certified to be in the sum of $559.57, for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting. All concur.

ENTERED: August 21, 2014.

_____
CHIEF JUSTICE

7