TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000425-KB

DATE 3-1-16 EnAGrou.ttP.c.

KENTUCKY BAR ASSOCIATION                                    MOVANT


V.                          IN SUPREME COURT


DAVID THOMAS SPARKS                                    RESPONDENT


## OPINION AND ORDER

The Board of Governors (the Board) of the Kentucky Bar Association

(KBA) recommends that David Thomas Sparks be suspended from the practice

of law for 181 days, 120 days of which may be probated upon condition that he

attend ethics education and business management education including the use

of escrow accounts in the amount of 30 hours, and that he establish an IOLTA

account in accordance with Supreme Court Rule (SCR) 3.830.[1]  Finding

sufficient cause to do so, we adopt the Board's recommendations.  Sparks,

---

[1] In its Conclusions of Law, the Board stated that: "Pursuant to SCR 3.370(5), the Board of Governors decided . . . . that the decision of the Trial Commissioner as to the findings of the violations and degree of discipline imposed was supported by substantial evidence and not clearly erroneous.  *It adopts those findings as its own*[.]" (Emphasis added).  We note that the Trial Commissioner recommended that Sparks be suspended "for 181 days, which may be probated 120 days," which we interpret as recommending Sparks serve a suspension of 61 days with 120 days probated. However, the Board's recommendation states that Sparks should be suspended "for 181 days, which may be probated to 120 days," which appears to be a recommendation that Sparks serve 120 days with 61 days probated.  Because the Board indicated its intention to adopt the Trial Commissioner's discipline as its own, we believe that this apparent change in the length of the "to serve" portion of the suspension was inadvertent.  Therefore, we adopt the suspension as initially proposed by the Trial Commissioner.

whose KBA number is 85840, and whose bar address is 1719 Ashley Circle, Suite 100, P.O. Box 1925 Bowling Green, Kentucky 42102, was admitted to the practice of law in the Commonwealth of Kentucky in October 1995.

## I. BACKGROUND

In 2009, Sparks represented Bill Adams (Bill) in a personal injury lawsuit against Beacon Construction, Inc., which was insured through Cincinnati Insurance Co. (Cincinnati). During litigation, Cincinnati issued two partial settlement checks to Bill; one for $4,316.67 and another for $5,000. The distribution of funds from those checks is not in dispute. In August 2010, Bill completely resolved his claim, and Cincinnati issued an $11,000 check, payable to "Bill Adams & His Attorney, David T. Sparks." Sparks deposited the $11,000 check in a non-IOLTA escrow account.

On December 5, 2011, Bill's son, Jeffrey Adams (Jeffrey), a practicing attorney in Atlanta, Georgia, sent a letter to Sparks indicating that Bill was unhappy with Sparks's representation. According to Jeffrey, Sparks had failed to follow up with Bill regarding the status of the $11,000 settlement check despite several previous attempts to contact Sparks made by Bill, by Jeffrey, and by Jeffrey's sister. Additionally, Jeffrey asked Sparks to provide regular, written status reports to Bill, as well as to release all money owed to Bill from the settlement. Sparks did not respond to this letter.

On February 6, 2012, Jeffrey sent another letter to Sparks, which referenced the December letter. Sparks did not respond in writing to this letter. However, at approximately 2:00 a.m. on April 27, 2012, Sparks left a

2

message on Jeffrey's voicemail stating that he was still holding the $11,000 check in his escrow account because he was waiting to hear from Medicare about a potential lien.

Bill died shortly after Jeffrey sent the February letter. Jeffrey, who was appointed co-executor of his father's Estate, contacted the law firm of English, Lucas, Priest, & Owsley to represent Bill's Estate. Attorney Charles English, a member of the firm, investigated the handling of the $11,000 settlement check and ultimately requested a final accounting from Sparks. Sparks did not respond.[2]

On August 20, 2012, Jeffrey filed a complaint with the KBA against Sparks. The complaint was served on Sparks on October 12, 2012. Sparks failed to respond within the allotted 20-day time period and the Inquiry Commission then issued a six-count charge against Sparks, which was served on January 12, 2013. The charge alleged that Sparks violated:

1. SCR 3.130-1.4(a)(4) by failing to respond to requests for information from his client;

2. SCR 3.130-1.15(a) by failing to properly maintain a client's funds in an escrow account;

---

[2] English originally sent a letter to Mike Breen, of Breen & Morgan Associates at Law PSC, asking about the $11,000 check. English believed that Sparks was working for Breen & Morgan when he represented Bill because Cincinnati's $4,316.67 and $5,000 checks were made payable to "Bill Adams and Breen & Morgan Associates at Law PSC." However, Breen informed English that Sparks had never worked for Breen & Morgan. Sparks disputed this claim during his hearing with the Trial Commissioner. The nature of the relationship between Sparks and Breen & Morgan is not clear, but it is not at issue here.

3. SCR 3.130-1.15(b) by failing to properly notify his client upon receiving funds, by failing to promptly deliver funds his client was entitled to, and by failing to render a full accounting as requested by his client;

4. SCR 3.130-8.1(b) by failing to respond to the bar complaint, despite receiving notification from the Disciplinary Clerk that the Inquiry Commission, through the Office of Bar Counsel, required information regarding the complaint, and despite having received a warning that failure to respond to that demand for information could result in additional charges;

5. SCR 3.130-8.4(b) by taking funds, subject to a known obligation to make a specified distribution of those funds, with the failure to make the required distribution constituting a violation of KRS 514.070(1) (Theft by Failure to Make Required Disposition of Property); and

6. SCR 3.130-8.4 by keeping a client's funds for his personal use.

The Inquiry Commission remanded the matter for Bar Counsel to determine if Sparks had an escrow account and if documentation regarding the account could be obtained. Sparks filed for leave to file an answer to the charge on March 29, 2013, which was granted. On April 11, 2013, attorney Brandon Marshall agreed to represent Sparks, *pro bono*, and on April 19, 2013, Sparks wired $11,000 into Marshall's escrow account to be appropriately dispersed. On April 25, 2013, Marshall, on behalf of Sparks, filed an Answer to the charge stating that Sparks was prepared to make substantial admissions of

4

fault and raising concerns regarding Sparks's mental and emotional health, which may have resulted in his inattention to his client and the KBA.

A Trial Commissioner was appointed and, after preliminary hearings and depositions, she held an evidentiary hearing on July 31, 2014. During these proceedings Sparks, now representing himself, testified that he always maintained contact with his client, Bill. However, he refused to respond to Jeffrey, Jeffrey's sister, or English, because he was not given authorization by Bill to discuss the case with them, and he did not want to breach his duty of confidentiality to his client. Sparks further testified that he did not respond to the KBA's requests because they seemed to imply he had partaken in criminal activity, and he believed his Fifth Amendment rights protected him from having to respond to such accusations. Sparks also testified that he had mistakenly spent most of the $11,000 from the settlement on other case-related material. Sparks stated that he believed he was spending money he had earned from another case, which he accidentally put into his personal account instead of his escrow account, and did not realize his error until formal charges were brought against him. However, Sparks did not produce any documentation to support his testimony.

On November 4, 2014, the Trial Commissioner filed her Report, finding that five of the six counts (Counts I, II, III, IV, and VI) against Sparks had been proven by a preponderance of the evidence. The Trial Commissioner found that Count V, the alleged violation of SCR 3.130-8.4(b), had not been proven by a preponderance of the evidence. In her Report, the Trial Commissioner

5

expressed concerns about Sparks's mental status as well as his understanding of the use of escrow accounts and stated that she could not conclude that Sparks intentionally took his client's property pursuant to KRS 514.070(1). The Trial Commissioner recommended that Sparks be suspended from the practice of law for 181 days, 120 days of which should be probated on the condition that Sparks attend 30 hours of ethics education and business management education including the use of escrow accounts; that he establish an IOLTA account; and that he pay the costs of the proceedings. Sparks then appealed to the Board, which held oral arguments on May 15, 2015. The Board approved the Trial Commissioner's decision by a vote of 18 to 1 and filed its "Findings of Fact, Conclusions of Law, and Recommendation of the Board of Governors" on August 5, 2015. Bar Counsel then filed a Notice for the Court to review the Board's decision pursuant to SCR 3.370(7)

## II.  ANALYSIS

Before we consider the substance of the parties' arguments, we address a procedural issue raised by Sparks. SCR 3.370(6) provides that "[t]he Board shall issue a written decision within forty five (45) days of voting on [a case]." Sparks argues that the Board missed this deadline, issuing its written decision some 82 days after voting.

Setting aside whether the Board missed the preceding deadline, we do not dismiss a disciplinary proceeding for such a procedural error absent some prejudice to the attorney. *Kentucky Bar Association v. Deters*, 465 S.W.3d 30, 33 (Ky. 2015), *reconsideration denied* (Aug. 20, 2015) (denying an attorney's

6

motion to dismiss the Board's late filing of its findings because the attorney failed to show any prejudice). Furthermore, as we pointed out in *Deters*, even if we grant Sparks's motion and strike the Board's findings, "the trial commissioner's findings and report would remain within the record. And the trial commissioner found [Sparks] guilty with a recommended suspension . . . ." *Id.* Therefore, "[s]triking the Board's findings would have little impact on our review of [Sparks's] conduct." *Id.*

We therefore decline to dismiss this disciplinary action against Sparks because Sparks has failed to show how he was prejudiced by any delay by the Board.

Turning now to the substantive arguments on appeal, we find that more than sufficient evidence exists to support the Board's findings of fact and conclusions. Therefore, we accept the Board's recommendation and find Sparks guilty of violating Counts I, II, III, IV, and VI of the charge against him but not guilty of violating Count V. We address each count below in turn.

## A. Count I

Sparks violated SCR 3.130-1.4(a)(4) by refusing to respond to multiple requests for information about his client's $11,000 settlement check. SCR 3.130-1.4(a)(4) states that "[a] lawyer shall promptly comply with reasonable requests for information[.]" Sparks concedes that he ignored multiple requests for information regarding the handling of the settlement check. However, Sparks argues that he did not violate this rule because his client did not give him authorization to speak with anyone about his case, and that he was

7

worried about breaching his duty of confidentiality under SCR 1.130(6). This argument is not persuasive because Sparks did not reach out to his client for permission to reveal this information, nor did he inform any party who requested information that they needed authorization from his client. Furthermore, despite his concern about client confidentiality, Sparks left a message regarding the status of the funds on Jeffrey's voicemail. Therefore, Sparks clearly violated SCR 3.130-1.4(a)(4).

## B. Count II

Sparks violated SCR 3.130-1.15(a) by failing to properly maintain client funds. This issue is not in dispute, as Sparks admits to comingling his clients' funds in his escrow account in violation of this rule.

## C. Count III

Sparks violated SCR 3.130-1.15(b) by failing to promptly deliver funds to which his client was entitled. SCR 3.130-1.15(b) states that "a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive[.]" Sparks claims that his delay in delivering the client his share of the settlement was due to a potential Medicare lien. However, Sparks failed to contact Medicare about this matter until receiving his bar complaint, which occurred two years after Sparks received the $11,000 settlement check. Once contacted, Medicare informed Sparks that no lien existed on his client's settlement. Thus, Sparks's stated reason for holding the settlement funds is unpersuasive. Finally, while it is true that Sparks paid Bill's Estate the full

8

amount of the settlement, he did not do so until more than two years after the receipt of the funds and after being threatened with discipline.

## D. Count IV

Sparks violated SCR 3.130-8.1(b) by failing to respond to the KBA's complaint. SCR 3.130-8.1(b) states that a lawyer shall not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority[.]" Sparks claims that he did not realize how much time he had to respond to the complaint. However, the letter he received specified the time in which he had to respond. We find no justification for Sparks's confusion regarding this violation.

Sparks also argues that he believed he had a Fifth Amendment right not to respond; however, he did not advise the KBA that he was asserting this right. Furthermore, the right would have applied only to Count V, and would not have relieved Sparks of the duty to respond to Counts I, II, III, IV, and VI of the charge.

## E. Count V

SCR 3.130-8.4(b) states that "[i]t is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]" The KBA alleges that Sparks violated this rule by committing theft under KRS 514.070(1), which states the following:

> A person is guilty of theft by failure to make required disposition of property received when:

(a) He obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition . . . .; and

(b) He intentionally deals with the property as his own and fails to make the required payment or disposition.

In order to show a violation of SCR 3.130-8.4(b), "[w]e only require a Respondent's actions to be shown, by a preponderance of the evidence, to fit within a crime under state or federal law." *Kentucky Bar Association v. Edwards*, 377 S.W.3d 557, 563 (Ky. 2012). Thus, neither a criminal conviction nor filed charges are necessary to discipline Sparks for potential criminal acts. *Id.*

Sparks argues that he did not intentionally spend his client's money. The Trial Commissioner agreed, finding that Sparks believed he was appropriately spending money he had earned from another client, which he had mistakenly put in the wrong bank account. Although we are not bound by the findings of fact of the Trial Commissioner, *Kentucky Bar Association v. Greene*, 386 S.W.3d 717, 722 (Ky. 2012), we believe that those findings herein are supported by the evidence.

As noted by the Trial Commissioner, Sparks indicated in his answer that he has some mental health issues. The Trial Commissioner also found that Sparks exhibited a remarkable lack of knowledge regarding the need for and use of escrow accounts. These findings support the Trial Commissioner's conclusion that Sparks lacked the intent to commit theft. Furthermore, we note that Sparks eventually distributed the entirety of the settlement proceeds

10

without taking a fee. While this does not negate his misuse of the funds, it does mitigate against a finding of intent to commit theft. Therefore, we agree with the Trial Commissioner that the KBA did not meet its burden of proving that Sparks's actions constituted theft under KRS 514.070(1).

## F. Count VI

Sparks violated SCR 3.130-8.4 by using his client's funds for personal use. This issue is not in dispute, as Sparks admitted to spending the majority of the $11,000 settlement check on other case-related activity in violation of this rule.

## G. Suspension

The KBA asks this Court to permanently disbar Sparks, or at least suspend him for several years. The punishment sought by the KBA is far more severe than the suspension recommended by the Trial Commissioner and the Board. SCR 3.380 describes the degrees of discipline available:

> Upon findings of a violation of these rules, discipline may be administered by way of private reprimand, public reprimand, suspension from practice for a definite time, all of which may be with or without such conditions as the Court may impose, or permanent disbarment.

The KBA cites *Fitzgerald v. Kentucky Bar Association,* 381 S.W.3d 318 (Ky. 2012), *Kentucky Bar Association v. Rice,* 229 S.W.3d 903 (Ky. 2007), and *Caudill v. Kentucky Bar Association,* 155 S.W.3d 725 (Ky. 2005) to support its contention that Sparks deserves a more stringent penalty. All of these cases involve attorneys who were permanently disbarred. However, the disciplined attorneys were also convicted of criminal financial misconduct. In *Fitzgerald,*

11

the attorney, who was the designated payee for a social security disability recipient, converted the recipient's benefits to his own use and pled guilty to theft by failure to make disposition under KRS 514.070, a Class D felony. 381 S.W.3d at 318. In *Rice*, the attorney obtained two credit cards by using someone else's identity, used those credit cards to make purchases totaling $14,322.42, and, after his indictment, fled the country. 229 S.W.3d at 903. When he returned to Kentucky, the attorney was arrested and he pled guilty to two counts of false statement as to identity under KRS 434.570. *Id.* In *Caudill*, the attorney sought permanent disbarment after pleading guilty to embezzlement of money belonging to the United States in violation of Title 18 U.S.C. § 641 and to two counts of theft by failure to make required disposition of property. 155 S.W.3d at 725. These cases are distinguishable because Sparks was not charged with and did not plead guilty to committing any crime.

The KBA also cites to *Kentucky Bar Association v. Isenburg*, 329 S.W.3d 327 (Ky. 2011) in which we suspended an attorney for five years for depositing a client's settlement check into his personal account, never sending the client his portion of the check, and making a series of misrepresentations to the client. While Sparks was not responsive, and while Sparks may have made a misrepresentation to Jeffrey, no evidence exists that he made any misrepresentations to Bill about the settlement check. Therefore, we do not find this case to be persuasive.

Instead, we find the cases relied on by the Trial Commissioner to be more analogous. In *King v. Kentucky Bar Association*, 440 S.W.3d 378 (Ky. 2014),

12

the attorney deposited settlement checks into his escrow account; however, he used his escrow account to pay personal expenses and failed to maintain a sufficient balance to pay his clients. *Id.* at 379. King, who had previously been publicly reprimanded for a DUI conviction, moved for a 181 day suspension with conditions, which the KBA essentially did not oppose and which we granted. *Id.* at 380.

In *Kentucky Bar Association v. Francis*, 439 S.W.3d 750 (Ky. 2014), the attorney paid personal expenses from his escrow account, failed to maintain sufficient funds in that account, failed to respond to notices from Bar Counsel, and failed to return unearned fees to a client. *Id.* 750-53. The Board, after noting the attorney had been privately admonished twice before, recommended a 181 day suspension, which this Court imposed. *Id.* at 753.

Sparks's actions here are more in line with those of the attorneys in *King* and *Francis*, who misused client funds, but were not charged with or convicted of crimes. Therefore, we believe that the sanctions recommended by the Board are appropriate.

ACCORDINGLY, IT IS ORDERED THAT:

1. David Thomas Sparks, KBA Member No. 85840, is found guilty of violating SCR 3.130-1.4(a)(4), SCR 3.130-1.15(a), SCR 3.130-1.15(b), SCR 3.130-8.1(b), and SCR 3.130-8.4.

2. Sparks is suspended from the practice of law for one-hundred-eighty-one (181) days, with sixty-one (61) days to serve[3] and the balance probated for

---

[3] See footnote 1.

two years from the date of this Order conditioned on Sparks completing the conditions set forth below.

3. Sparks shall attend at his own cost and successfully complete thirty (30) hours of ethics education and business management education including the use of escrow accounts and shall establish an IOLTA account. Sparks will not apply for CLE credit for his attendance at these programs. Furthermore, Sparks will provide an appropriate release form so that his CLE records can be reviewed for one year following his completion of those programs.

4. Sparks shall not commit any crimes, including misdemeanors and felonies, during the period of probation.

5. Sparks shall not receive any new disciplinary charges during the probationary period related to conduct discovered or occurring after the date of this Order.

6. Sparks shall notify all necessary courts and clients of his sixty-one (61) day suspension in accordance with SCR 3.390(b). Those notifications shall be made by letter placed in the United States mail within ten (10) days from the date of this Opinion and Order. Sparks shall also simultaneously provide a copy of all such letters to the Office of Bar Counsel. Also, to the extent possible, Sparks shall cancel and cease any advertising activities in which he is engaged.

14

7. As stated in SCR 3.390(a), this order shall take effect on the 10th day following its entry. Sparks is instructed to promptly take all reasonable steps to protect the interests of his clients.

8. Pursuant to SCR 3.390, Sparks shall not, during the term of suspension, accept new clients or collect unearned fees.

9. Pursuant to SCR 3.450, Sparks is directed to pay all costs associated with this disciplinary proceeding for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting. All concur.

ENTERED: February 18, 2016.

_____
CHIEF JUSTICE