# Supreme Court of Kentucky

TO BE PUBLISHED
FINAL
DATE 5/16/20
a hutcheson

2020-SC-000035-KB

MAURY DAVID KOMMOR                 MOVANT

V.                 IN SUPREME COURT

KENTUCKY BAR ASSOCIATION             RESPONDENT

## OPINION AND ORDER

This matter is before us on Maury David Kommor's motion, pursuant to SCR[1] 3.480(2), for this Court to enter an Order suspending him from the practice of law for 181 days, to be probated for two years, subject to the conditions set forth below, for violations of SCR 3.130(1.3), SCR 3.130(1.4)(a)(4), SCR 3.130(1.15)(a) and SCR 3.130(1.15)(b) as set out in KBA File No. 17-DIS-0115. The Kentucky Bar Association has filed a response stating no objection to the motion and proposed sanction.

## I. Factual and Procedural Background.

Kommor was admitted to the practice of law in the Commonwealth of Kentucky on April 26, 1985. His membership number is 81043, and his bar roster address is 617 Baxter Ave., Louisville, KY 40204.

---

[1] Kentucky Rules of the Supreme Court.

1

In early 2013, Melissa Hall retained Kommor and his associate to represent her in her personal injury case resulting from a boat explosion. On February 19, 2013, an action was filed concerning the explosion in the United States District Court for the Western District of Kentucky in Louisville. On July 22, 2013, Kommor and his associate filed a Claim and Answer on behalf of Hall. On May 7, 2015, Hall settled her case with the boat's owners for $450,000, which was deposited into Kommor's escrow account. The same day, Kommor's associate gave Hall a settlement distribution letter, disclosing that, after attorneys' fees and Hall's share, the balance of the funds, $122,621.08, would be used to pay the remaining medical bills and liens: Pegasus Funding, $54,631.08; U of L Orthopedics, $10,000; and U of L Hospital, $57,990.

Kommor's associate initially handled payment of Hall's medical liens but did not have control over the firm's escrow account. Kommor had signature authority on the escrow account and authorized payments. On May 21, 2015, Kommor's associate renegotiated a lower amount with U of L Hospital than was listed in the Settlement Distribution letter. It accepted $40,000, with the balance, $17,990, remaining in escrow.

On July 24, 2015, Kommor's associate and Hall disagreed over the payment of the Pegasus lien; the associate advised Hall that the lien needed to be paid immediately because it was due to inflate to $65,232.36 on July 29, 2015. Hall wanted to continue to negotiate the amount. Hall had missed several scheduled appointments with the associate to discuss payment of the outstanding debts. As a result, the associate sent Hall a letter indicating that all future contact would be exclusively with Kommor, and that the associate would have no further contact with Hall.

2

On September 2, 2015, Hall sent Kommor a text instructing him to pay the Pegasus lien. On September 8, 2015, Hall asked if Kommor had paid Pegasus and when he responded negatively, she again instructed him to pay the lien. Kommor continued to encourage Hall to try and renegotiate her own lien to a lower amount, as that was Hall's original desire. On September 21, 2015, Hall again instructed Kommor to pay the lien before additional penalties accrued. Kommor stated he would send the check for $52,000. However, Kommor did not pay the lien at that time. The lien had previously increased to $65,232.36 on July 29, 2015. Over four months later, on January 26, 2016, Kommor negotiated a reduction and issued a check from his escrow account to Pegasus for $62,500.

Kommor held Hall's funds, as well as the settlement proceeds of the third-party lien holders, in his escrow account. Kommor became aware Hall was enrolled in Passport/Medicaid after her settlement was agreed to and allocated. Kommor withheld the balance to wait on unknown liens. Two checks were initially written to satisfy liens against her settlement. However, the third check was not written for what Kommor determined was the full remaining balance until requested in April 2017 and delivered to Hall's new attorney.

On Friday, November 20, 2015, Kommor's escrow account balance was $59,446.78. However, the minimum that should have been held for Hall in his escrow account was $82,621.08. Deposits were made totaling $28,000 into his escrow account two business days later on Tuesday, November 24, 2015. Thereafter, on August 24, 2016, Kommor's escrow account balance was $14,972.05, but it should have held a minimum of $20,121.08 for the

3

remainder of Hall's settlement funds. Deposits were made totaling $35,800.00 in his escrow account two days later.

Kommor was unaware of this situation until a recent review of his accounts and practices. Upon discovery, he immediately realized a problem existed and has instituted changes to correct the issue. Hall thereafter hired new counsel to address the remainder of her settlement funds in Kommor's escrow account. On March 30, 2017, her attorney sent Kommor and his associate correspondence indicating he had been retained to represent Hall and requesting documentation. On April 5, 2017, Kommor sent correspondence advising the balance of the settlement funds were being transferred to Hall by check from Kommor's escrow account. Hall, through counsel, then sent additional correspondence requesting, among other things, his escrow account statements.

On April 14, 2017, Hall filed a civil claim against Kommor and his associate based on the representation. On April 21, 2017, the parties entered into a private settlement agreement. As a result, a Notice of Voluntary Dismissal was filed in the civil case.

Thereafter, on May 23, 2017, Kommor paid an outstanding balance of $2,220 for Hall's medical bill to GLE Collection Company, LLC; an outstanding balance of $4,500 for Hall's medical bills for University of Louisville Anesthesiology to Chase Receivables; and on May 24, 2017, an outstanding balance of $836.63 for Yellow Ambulance to Credit Clearing House of America.

Approximately two years later, in March 2019, the Inquiry Commission issued a Charge, alleging four (4) violations of the Rules of Professional Conduct: SCR 3.130(1.3), SCR 3.130(1.4)(a)(4), SCR 3.130(1.15)(a), and SCR

4

3.130(1.15)(b). Kommor admits that his actions violated SCR 3.130(1.3), which provides, "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Kommor violated this Rule by failing to practice diligence in his duties regarding the payment of medical liens as Hall's counsel following the settlement of her civil case. Although Kommor was not made aware of the additional medical expenses until Hall had hired new counsel, Kommor admits to violating the Rule.

In addition, Kommor admits he violated SCR 3.130(1.4)(a)(4), which states in part, "[a] lawyer shall: (4) promptly comply with reasonable requests for information[.]" Kommor violated this Rule by failing to respond to Hall's requests regarding the balance of her settlement funds until she retained new counsel. Kommor did have consistent communication with Hall throughout the representation, by text and telephone communications. Kommor also assisted Hall with other unrelated legal issues after settlement of her case. However, Kommor admits to violating the Rule by failing to communicate regarding the balance of her settlement funds.

Kommor also admits he violated SCR 3.130(1.15)(a), which states in pertinent part, "[a] lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property." Kommor violated this Rule by failing to continuously maintain a minimum escrow account balance with Hall's settlement funds.

Finally, Kommor admits to violating SCR 3.130(1.15)(b), providing,

Upon receiving funds or other property in which a client has an interest, a lawyer shall promptly notify the client. Except as stated in this Rule or otherwise permitted by law or by agreement with

5

the client[,] a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive and, upon request by the client, shall promptly render a full accounting regarding such property.

Kommor violated this Rule by failing to disburse the remainder of Hall's settlement funds to her in a timely manner. However, Kommor provided Hall with a check for the balance he believed should be held in his escrow account, upon request by Hall's attorney.

Kommor desires to terminate these proceedings by consenting to a 181-day suspension, to be probated for a period of two years with conditions.

## II. Analysis.

The KBA indicates in its response to Kommor's motion that the proposed sanction is appropriate. As an initial matter, Kommor has no prior disciplinary history, has fully cooperated with the Office of Bar Counsel, was not convicted criminally for his actions, and has fully accounted to his client for her funds. In light of these facts, and upon review of this Court's disposition of similar disciplinary cases, we accept Kommer's proposed sanction.

By way of comparison, in *Bratcher v. Ky. Bar Ass'n*, 487 S.W.3d 894 (Ky. 2016), Pamela Bratcher represented a personal injury client, received settlement proceeds, and deposited these proceeds in her escrow account. Thereafter, Bratcher was charged with, and admitted to, violations of SCR 3.130(1.15)(a), commingling funds; SCR 3.130(1.15)(b), failing to notify client of receipt of funds or to distribute properly; and SCR 3.130(8.4)(c), using client's funds as her own. This Court imposed a sanction of one-year suspension, with sixty days to serve, and the balance probated for two years. In addition,

6

Bratcher was required to participate in EPEP[2] and to cooperate with KYLAP.[3] Unlike Bratcher, Kommor has no prior disciplinary history.

Similarly, we sanctioned David Sparks for violating SCR 3.130(1.4)(a)(4), (1.15)(a), (1.15)(b), (8.1)(b), and (8.4) for depositing a settlement check in a non-IOLTA[4] account, and failing to disburse the funds to his client. *Ky. Bar Ass'n v. Sparks*, 480 S.W.3d 278 (Ky. 2016). Sparks' sanction was a 181-day suspension, serve 61 days, with the balance, 120 days, probated on the condition that Sparks attend EPEP and establish an IOLTA account. In contrast to Kommer, Sparks had previously been uncooperative with the Office of Bar Counsel and had failed to set up an IOLTA account.

Furthermore, we sanctioned James King with a 181-day suspension, to serve 61 days, with the balance probated for two years, for two counts of violating SCR 3.130(1.15)(a); commingling clients' funds with his own, overdrawing his escrow account, and using his escrow account to pay personal expenses. *King v. Ky. Bar Ass'n*, 440 S.W.3d 378 (Ky. 2014). Unlike Kommer, King had received prior discipline two years earlier for a criminal conviction.

Finally, Kommor's actions can be distinguished from those set out in *Ky. Bar Ass'n v. Francis*, 439 S.W.3d 750 (Ky. 2014), for which Cabell Francis received a 181-day suspension. Francis was found guilty on multiple counts for violations of SCR 3.130(1.15)(a), failing to separate clients' funds from his own and paying personal expenses from his escrow account; SCR 3.130(1.16)(d), failing to return unearned portion of a fee; and SCR

---

[2] The Ethics and Professionalism Enhancement Program.
[3] Kentucky Lawyers' Assistance Program.
[4] Interest on Lawyers' Trust Accounts.

3.130(8.1)(b), failing to respond to charges of misconduct. Suspension was warranted based on Francis's failure to cooperate and his prior disciplinary history.

**ACCORDINGLY, IT IS ORDERED THAT:**

1. Maury David Kommor, KBA Member No. 81043, is suspended from the practice of law for one-hundred-eighty-one (181) days, to be probated for two years from the date of this Order.

2. Kommor shall attend, at his expense, the next scheduled Ethics and Professionalism Enhancement Program offered by the Office of Bar Counsel, separate and apart from his fulfillment of any other continuing education requirement, within twelve months after entry of this Order. Kommor shall not apply for CLE credit of any kind for this program.

3. Kommor shall also attend, at his expense, the next scheduled Trust Account Management Program offered by the Office of Bar Counsel, separate and apart from his fulfillment of any other continuing education requirement, within twelve months after entry of this Order. Kommer shall not apply for CLE credit of any kind for this program.

4. Kommor shall not receive any disciplinary charges for two years from entry of this Order.

5. Kommor shall pay all costs associated with the investigation and prosecution of this proceeding, pursuant to SCR 3.370.

6. In the event Kommor fails to attend and successfully complete EPEP or the Trust Account Management Program, receives new disciplinary charges, or fails to pay costs, the Office of Bar Counsel may file a motion with the Court

8

requesting the issuance of a show cause order directing Kommer to show cause, if any, why the 181-day suspension should not be imposed.

All sitting. All concur.

ENTERED: March 26, 2020.

_____
CHIEF JUSTICE

9